UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| KIM LOGAN, as Legal Guardian for ) <br> JAMES O. GUMM, JR.,                ) <br>                                  ) <br>      Plaintiff,                  ) <br>                                  ) <br> and                              ) <br>                                  ) <br> KENTUCKY CABINET FOR HEALTH &    ) <br> FAMILY SERVICES,                 ) <br>                                  ) <br>      Intervening Plaintiff,      ) <br>                                  ) <br> and                              ) <br>                                  ) <br> UNIVERSITY OF KENTUCKY &         ) <br> KENTUCKY MEDICAL SERVICES        ) <br> FOUNDATION,                      ) <br>                                  ) <br>      Intervening Plaintiffs,     ) <br>                                  ) <br> v.                               ) <br>                                  ) <br> COOPER TIRE & RUBBER COMPANY,    ) <br>                                  ) <br>      Defendant.                  ) | No. 5:10-CV-03-KSF <br><br> ORDER |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is a product liability case centering on an alleged tire defect and resultant auto accident injuring James Gumm. The current dispute involves Plaintiff's request to test destructively a companion tire on the vehicle involved.

After conducting a telephonic conference on discovery disputes in this case, the Court preserved the status quo and ordered additional briefing regarding the proposed destructive cross-sectioning of the right-rear companion tire. *See* DE #62 (Order). The parties have briefed

1

the issue. *See* DE #71 (Response Brief); DE #74 (Sealed Response); DE #79 (Reply). With wearying predictability, collateral issues[1] have erupted[2] to accompany normal briefing practice.[3]

The Court has evaluated all filings, the applicable rules, and the relevant cases. Under a strict limit and protocol, the Court, in its discretion, will permit destructive testing as set forth in this Order.

## I. ANALYSIS

Permission for destructive testing falls within the broad discretionary purview of the Court. An effort at "just" determination informs application of the civil rules, *see* Fed. R. Civ. P. 1, and in this context, the Court must endeavor to permit full and fair discovery while preserving the trial and evidentiary rights of both sides.

---

[1] Defendant moved to strike Exhibits 11 and 12 of the Response by Plaintiff. *See* DE #75 (Motion to Strike). Plaintiff responded. *See* DE #83. Defendant **SHALL** reply by January 5, 2011. The reply shall confirm or deny whether Exhibits 11 and 12 currently are public records in the relevant state case.

[2] Defendant moved for leave to file its opposition and the various attachments under seal. *See* DE #73 (Motion for Leave). The Court ordered additional briefing to address the possibility of partial sealing. *See* DE #76 (Order). The parties timely responded, agreeing with the possibility and proposing options. *See* DE #78 (Supplement); DE #80 (Response).
    The Court **GRANTS** the motion to seal (DE #73), but **only partly**. Within 30 days after the requisite 45-day time period for designating confidential material has expired, per the parties' agreed protective order (DE #53), Defendant **SHALL** provide to the Clerk of Court a redacted opposition brief and attachments with only confidential material, or material otherwise protected by order of another court, redacted. The Clerk of Court shall then file that redacted version in the public record as unsealed, while maintaining the original filing under seal.

[3] Plaintiff has now submitted a supplemental reply and moved for leave to file the new reply under seal. *See* DE #81 (Motion to Seal Document). The Court specifically ordered that briefing would conclude with Plaintiff's Reply as submitted prior to December 7, 2010. *See* DE #62 (Order). Accordingly, the Court **ORDERS** the supplemental reply (DE #82) to be **STRICKEN** from the record. The Court **DENIES** the motion to seal (DE #81) as moot.

A. Inspection Agreement

First, contrary to Defendant Cooper Tire's contention, the Tire and Wheel Inspection Agreement does not conclude the matter. *See* DE #74 Exhibit E (Agreement). The Agreement, entered into by both parties on March 25, 2010, applies while in effect. However, the Agreement does not foreclose Logan's request for court permission to do a more invasive inspection. Certainly, without permission, Logan would risk a violation of that order (and other sanctions) by testing, but nothing in that document forecloses the pending request.

B. Destructive Testing

In a rare moment of agreement, the parties appear to concur that the proper standard for evaluation of destructive testing efforts emerges from Federal Rule of Civil Procedure 34 and a Colorado Supreme Court case, *Cameron v. District Court*, 565 P.2d 925 (Colo. 1977), as adopted by various federal courts. *See* DE #71 at 4-6 (Plaintiff's articulation of standard); DE #74 at 11-17 (Defendant's version). Per *Cameron*, "the overriding practical concern . . . has been the formulation of methods for providing full discovery while preserving the rights of all parties to the litigation." *See Cameron*, 565 P.2d at 931.

Under Rule 34(a), a party may request that, within the scope of Rule 26(b), the opposing party "produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated tangible things." *See* Fed. R. Civ. P. 34(a)(1). Whether to permit destructive testing stands "within the sound discretion of the court." *Conway v. Kaz, Inc.*, No. 09-CV-10065-DT, 2009 WL 3698561, at *2 (E.D. Mich. Nov. 4, 2009) (slip copy) (citing to *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988)). A court balances the "costs of the alteration of the object" with the "benefits of getting to the truth in the case." *See id.*

(citing *Nugent v. Hercules Offshore Corp.*, No. 98-3060, 1999 WL 1277536, at *1 (E.D. La. Dec. 28, 1999)). To conduct this balancing, the cases apply a four-prong test, as derived originally from *Cameron*:

> (1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*See id.* (quoting *Mirchandani v. Home Depot U.S.A., Inc.*, 235 F.R.D. 611, 614 (D. Md. 2006)). These are only factors, and they all inform the court's discretion about the propriety of destructive testing in the fabric of a particular case. Neither party cites controlling Sixth Circuit law on the analysis. Courts generally have said that the evidence sought must be "integral to proving the movant's case and do more than strengthen an already established claim or defense." *See id.* (quoting *Mirchandani*, 235 F.R.D. at 615). However, this burden "is not so high as to require definitive proof that [the moving party's] hypothesis will prove correct." *Id.* (quoting *Mirchandani*, 235 F.R.D. at 615).

The posture here is somewhat unorthodox because Plaintiff has the tire and thus is not requesting inspection of an item held by the defense. However, in the context of destructive testing, each side has a right to preservation of case evidence. Courts have collapsed the analysis into an assessment of good cause under Rule 26. *See Mirchandani*, 235 F.R.D. at 613 (treating testing request by plaintiff in possession as "more properly viewed . . . under . . . Rule 26(c)"); *Cameron*, 565 P.2d at 928-29. In the Court's view, each party logically has part of the burden. Thus, the Plaintiff must show a need for testing and how safeguards could protect the defense.

However, the defense must show prejudice from testing and discuss potential destructive-testing alternatives. Both sides have ably marshaled the arguments, and the Court tries, in a common sense way, to cut to the heart of the issues. Also, the Court agrees with Plaintiff that because the evidence at issue is not **the** particular product involved – that is, the companion tire itself is not the subject of the lawsuit – the anti-testing criteria should incrementally relax.

*Need for testing*

Plaintiff has not literally shown that the case will rise or fall based on whether requested testing occurs. Expert Cottles already has opined, *see* DE #47-11, and shearography alone evidently supports an opinion of tread belt separation. *See, e.g.*, DE #71, at 1, 2, 8 (remarking on separations shown by shearography); DE #71-2 at ¶ 7 (same). The proffered value in the tire sectioning is verification (and visual demonstration) of what the shearography purports to show. The Court does not doubt that the proof, if it pans out as Plaintiff predicts, would be helpful.[4]

All other objections aside, defense expert Grant agrees that tire cross-sectioning can "verify that there is a separation or is not a separation." *See* DE #74 Exhibit D at 3 (page 8 on the four-page display). The experts differ on whether sectioning could actually introduce or worsen a belt separation, but Grant's reference validates sectioning as an inspection method. Further, Plaintiff's materials show regular industry usage, persuading the Court that the process has broad acceptance and value as a diagnostic tool.

---

[4] In *Hawthorne v. Michelin Tire Corporation*, 100 F.3d 962 (9th Cir. 1996) (table) (unpublished), a rare federal appellate case on destructive testing, the Ninth Circuit signaled that evidence substantiating the value of destructive testing would be a factor in support of permitted testing. *See Hawthorne*, 100 F.3d at *4-*5. Under *Hawthorne*, the shearographic evidence would buttress a case for physical verification of the tire's internal properties. This erodes the idea that necessity is an inflexible sine qua non of destructive testing.

Plaintiff thus demonstrates that the testing would be useful and reasonable, if not strictly necessary.

*Prejudice*

Given the need analysis, a genuine showing of prejudice would foreclose testing. Here, however, limited testing exposes Cooper to little prejudice. The flexibility of good cause should mean that the need standard is lower if the possible prejudice is slight.

First, the Court notes that Cooper's expert Grant made some observations about the companion tire but did not include direct opinions about that tire in any of his enumerated case opinions. *See* DE #74 Exhibit A at 11-17 (Grant did mention the rear tire in sub-opinion 10, one exception to this statement). Thus, the Court questions Cooper's intent to rely substantively on the companion tire condition. Further, Cooper had possession of the companion tire – and all of the tires involved – for many months and has had the chance to photograph, measure, and manipulate the evidence for demonstrative purposes. Thus, Cooper will have detailed information about the unaltered tire for use in the case. While expert Grant, per his deposition, may want to show the jury an array with the subject and other tires in position, he can easily accomplish that through photos or video. The cases readily approve of photographic and other pre-testing data as mitigating prejudice. *See, e.g.*, *Mirchandani*, 235 F.R.D. at 615. Additionally, if the testing permitted substantially preserves the condition of the tire, Grant's trial use, if any, will not suffer appreciably. Preserved photographic proof and/or a product kept in substantially unaltered condition weighs in favor of testing. A strict protocol, and past access to the tire, can effectively meet these elements.

*Alternatives*

Each side endorses shearography as an accepted practice. Still, shearography plainly does not give jurors a view of the actual internal tire components. The proffered materials support that cutting a tire is accepted as a means of assessing belt separation. The test proposed is a matter of proof quality and jury access. Were the testing injurious and prejudicial to the defense, the Court would limit Plaintiff to shearography. However, in the particular circumstance of this case, a strict protocol on limited testing gives each party fair access to the mode of proof reasonably sought.

*Safeguards*

Safeguards here can assure that each side has full access to and use of the companion tire. Plaintiff can verify and demonstrate any belt separation through limited sectioning. Thus, Plaintiff may section the companion tire in only two (2) places. The entire remainder of the tire shall remain uncut and in its current condition. Plaintiff may not cut the tire at the point where the foreign object is imbedded. Two cuts give Plaintiff sufficient opportunity to verify, at distinct points, the separation suggested via shearography. With only two cuts permitted, the great majority of the companion tire will remain fully intact for use, reference, and demonstration by Defendant at trial.

Further:

-- Defendant may attend, observe, and record the entire sectioning process.

-- Defendant may fully inspect the results of sectioning.

-- Plaintiff must give Defendant adequate advance notice of the time, place, and specifics of sectioning (personnel to be involved, tools to be used). The parties shall cooperate on the schedule.

--      Sectioning shall be at Plaintiff's cost. Defense participation shall be at Defendant's cost.

--      Defendant may have reasonable access to the companion tire for additional photographs/measurements in advance of the sectioning.

--      Defendant may perform shearography or other such testing on the tire, pre and post-inspection, as reasonably requested.

--      Plaintiff's tendered protocol shall apply, except as modified by this order.

* * *

## II. CONCLUSION

The Court, in its discretion, determines that good cause supports the destructive testing on a limited and tightly regulated basis. The testing will produce evidence of use to Plaintiff not otherwise available. The testing, accepted in the industry, will not significantly impair Defendant in the presentation of evidence and a defense at trial. The protocol set forth protects Defendant's interests. As such, the Court directs that testing may occur as described.

The Court issues this Order resolving a non-dispositive pretrial matter under 28 U.S.C. § 636(b)(1)(A). Any party objecting to this Order should consult the statute, Judge Forester's Scheduling Order, and Federal Rule of Civil Procedure 72(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review. Should Cooper timely appeal, then Plaintiff shall be barred from conducting the sought testing pending resolution by the District Judge. Plaintiff may not schedule the testing until Cooper's objection period expires.

This the 28th day of December, 2010.

Signed By:

*Robert E. Wier* /s/ REW

**United States Magistrate Judge**