UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-3-KSF

KIM LOGAN, as Legal Guardian for
JAMES O. GUMM, JR.                                                                                      PLAINTIFF

and

KENTUCKY CABINET FOR
HEALTH & HUMAN SERVICES,
THE UNIVERSITY OF KENTUCKY
AND KENTUCKY MEDICAL SERVICES
FOUNDATION                                                                                    INTERVENING PLAINTIFFS


v.                                              **OPINION & ORDER**


COOPER TIRE & RUBBER COMPANY                                                          DEFENDANT


\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion in limine of the defendant, Cooper Tire & Rubber Company ("Cooper Tire"), to exclude the testimony of the plaintiff's proposed expert, Craig H. Lichtblau, pursuant to *Daubert v. Merrell Dow Pharamaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), and Federal Rule of Evidence 702. This motion is fully briefed and is ripe for review.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This products liability action arises out of a one-vehicle automobile accident which occurred on Interstate 64 in Montgomery County, Kentucky on February 12, 2009. At the time of the

accident, James O. Gumm, Jr. was driving a 1994 Chevrolet C2500 pickup truck in the westbound lane when the left rear tire of his truck failed. Gumm lost control of the vehicle, crashed, and was rendered a brain-injured quadriplegic as a result of the accident. This products liability action was subsequently filed by Kim Logan, Gumm's legal guardian, on January 4, 2010 against Cooper Tire, the manufacturer of the failed tire. [DE #1].

The plaintiff intends to call Craig H. Lichtblau, M.D., as an expert witness to opine about Gumm's future medical care and expenses. Dr. Lichtblau has prepared a "continuation of care" plan detailing the cost of Gumm's future medical care, support services and durable medical equipment [DE #47-6]. His plan calls for Gumm to be removed from the long term care facility where he is currently residing into a house to be constructed or purchased for him at a cost of $150,000 to $250,000, as well as one-on-one, around-the-clock care to be provided by a registered nurse or a licensed practical nurse, at a cost of approximately $30,000 per month. His plan also includes numerous non-medical services, such as a housekeeper, home maintenance and repair, lawn service, computer and cell phone service and equipment, and a new car every seven years with membership in a roadside service. The future cost of Dr. Lichtblau's continuation of care plan is approximately 18 million dollars.

Cooper Tire argues that Dr. Lichtblau's testimony must be excluded for two reasons. First, Cooper Tire argues that Dr. Lichtblau did not adequately investigate Gumm's health status and failed to completely analyze the likely costs of Gumm's future care. Second, Cooper Tire contends that Dr. Licthblau's continuation of care plan is intrinsically flawed and unreliable because it seeks to make Gumm normal and independent, rather than seeking to determine what is necessary and reasonable. For the reasons set forth below, the Court disagrees, and Cooper Tire's motion to

exclude Dr. Lichtblau's expert testimony will be denied.

## II.     RULE 702 AND THE SUPREME COURT'S HOLDINGS IN *DAUBERT* AND *KUMHO TIRE*

As amended in 2000, Rule 702 of the Federal Rules of Evidence states the requirements for admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998).

"[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Supreme Court stated in *Daubert*:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.

*Id*. at 592-93. The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *Id*. at 593; Fed.R.Evid. 104(a).

In determining whether to admit or exclude proffered expert testimony, the court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his

testimony will assist the trier of fact, and that the proffered testimony is reliable. *Id*. However, the court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). *See also United States v. 14.3 Acres of Land Situated in LeFloure County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) (The Court is mindful that its "role as gatekeeper is not intended to serve as a replacement for the adversary system."). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that this "gatekeeper" function applies to all expert testimony, not just scientific testimony. *Id*. at 147 (explaining that Rule 702 makes "no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony"). The Supreme Court proceeded to provide the district courts with a checklist for assessing the reliability of expert testimony. This list of "specific factors" "neither necessarily nor exclusively applies to all experts or in every case." *Id*. at 141. Listed considerations include whether an expert's theory can be tested, "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and "general acceptance." *Daubert*, 509 U.S. 593-94. Yet, the "list of factors was meant to be helpful, not definitive" and will vary from case to case. *Kumho Tire*, 526 U.S. at 151. *See also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one."). Thus, the trial court must use its discretion in determining whether reasonable criteria of reliability were used by a proffered expert and whether the proposed testimony meets those criteria. Nevertheless, "[t]he

4

Rules' basic standard of relevance . . . is a liberal one." *Daubert*, 509 U.S. at 587, and the trial court's gatekeeping role does not permit it to reject admissible expert testimony.

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, such as *Kumho Tire*. It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. In fact, the advisory comments to the 2000 amendments to Rule 702 noted that "[a] review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Advisory Committee Comments to the 2000 Amendments to Rule 702.

### III. ANALYSIS

The plaintiff's expert, Craig H. Lichtblau, is a board certified physiatrist with over twenty years of experience in treating trauma injuries and brain injuries. A physiatrist is a physician who specialized in the field of physical medicine and rehabilitation. American Medical Association, *Complete Medical Encyclopedia*, at 985 (1st ed. 2003). A review of Dr. Lichtblau's August 7, 2010 expert report [DE #47-5, 47-6, 47-7] and deposition [DE #189-3, 189-4] reveals that he conducted a thorough investigation of Gumm's health status. Prior to rendering an opinion in this case, Dr. Lichtblau reviewed in detail Gumm's medical condition following the accident. The history outlined in his detailed Summary Report reviews Gumm's extensive medical history, including various tests, opinions from treating doctors, in-depth analysis of his injuries, and his own direct observations of Gumm. While the plaintiff contends that Dr. Lichtblau failed to consider Gumm's social background, this does not render his opinion inadmissible under *Daubert*. Such information, even if relevant, goes to the credibility and weight of Dr. Lichtblau's opinion and can be addressed through cross examination.

Dr. Lichtblau's determination of cost also satisfies the requirements of *Daubert*. Although the plaintiff complains that the cost information in his expert report was obtained by a member of Dr. Lichtblau's staff, the information was reviewed for reasonability by Dr. Lichtblau. His experience in rehabilitative medicine qualifies him to assess the reasonableness of costs associated with his continuation of care plan.

Cooper Tire's second objection to Dr. Lichtblau's report revolves around its claim that Dr. Lichtblau seeks to make Gumm "normal" and "independent" and is overly generous, particularly to the extent that it provides for a medically equipped and medically staffed residence. However, Dr. Lichtblau's life care plan is based upon his years of experience in rehabilitative medicine as well as his assessment of Gumm's condition and his own observations and review of the medical record. As an expert, he is entitled to form opinions on the basis of these criteria. He has explained that his opinions are based on medical evidence, the American Medical Association guide, direct observation, clinical experience and review of the medical records. Furthermore, he has cited peer review articles in support of his views. "[T]he requirement that an expert's testimony be reliable means that it must be 'supported by appropriate validation - i.e., "good grounds,"' based on what is known." *Daubert*, 509 U.S. at 590. Dr. Lichtblau's opinions are based on his training as a physiatrist, his experience in the field of rehabilitative medicine, and his review and observations in this case. If his opinions are overly generous, then the plaintiff may address this contention during cross examination.

In conclusion, there is no dispute that Dr. Lichtblau is qualified in the field of rehabilitative medicine and life care planning. A review of his expert report and deposition reveals that he has properly applied the recognized methodologies in the field of rehabilitative medicine in reaching his

opinions concerning Gumm's future medical care. His testimony will assist the trier of fact in understanding Gumm's need for future medical care and in estimating the cost of his future medical care. Accordingly, the Court hereby **ORDERS** that Cooper Tire's motion to exclude the plaintiff's proposed expert, Craig H. Lichtblau [DE # 189] is **DENIED**.

This July 29, 2011.



Signed By:

*Karl S. Forester* KSF

United States Senior Judge