UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-3-KSF

KIM LOGAN, as Legal Guardian for
JAMES O. GUMM, JR.                                                                                   PLAINTIFF

and

KENTUCKY CABINET FOR
HEALTH & HUMAN SERVICES,
THE UNIVERSITY OF KENTUCKY
AND KENTUCKY MEDICAL SERVICES
FOUNDATION                                                                                   INTERVENING PLAINTIFFS


v.                                              **OPINION & ORDER**


COOPER TIRE & RUBBER COMPANY                                                     DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion in limine of the plaintiff, Kim Logan, as Legal Guardian for James O. Gumm, Jr., to exclude the testimony of the defendant's proposed expert, Bruce Goldberger, Ph.D., pursuant to *Daubert v. Merrell Dow Pharamaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), and Federal Rule of Evidence 702. This motion is fully briefed and is ripe for review.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

This products liability action arises out of a one-vehicle automobile accident which occurred on Interstate 64 in Montgomery County, Kentucky on February 12, 2009. At the time of the

accident, James O. Gumm, Jr. was driving a 1994 Chevrolet C2500 pickup truck in the westbound lane when the left rear tire of his truck failed. Gumm lost control of the vehicle, crashed, and was rendered a brain-injured quadriplegic as a result of the accident. This products liability action was subsequently filed by Kim Logan, Gumm's legal guardian, on January 4, 2010 against Cooper Tire and Rubber Company ("Cooper Tire"), the manufacturer of the failed tire. [DE #1].

The Cooper Tire intends to call Bruce Goldberger, Ph.D. as expert in forensic toxicology. The plaintiff seeks to exclude Goldberger's testimony relating to Gumm's urinalysis and opinions as to Gumm's alleged impairment at the time of the accident which Goldberger claims "influenced his ability to respond to an accident avoidance scenario."

## II. RULE 702 AND THE SUPREME COURT'S HOLDINGS IN *DAUBERT* AND *KUMHO TIRE*

As amended in 2000, Rule 702 of the Federal Rules of Evidence states the requirements for admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Generally, this rule "should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. American Honda Motor Co., Inc.*, 151 F.3d 505, 516 (6th Cir. 1998).

"[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Supreme Court stated in *Daubert*:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue.

*Id*. at 592-93. The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable, not that it is scientifically correct. *Id*. at 593; Fed.R.Evid. 104(a).

In determining whether to admit or exclude proffered expert testimony, the court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Id*. However, the court's gatekeeper role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). *See also United States v. 14.3 Acres of Land Situated in LeFloure County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). (The Court is mindful that its "role as gatekeeper is not intended to serve as a replacement for the adversary system.") Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that this "gatekeeper" function applies to all expert testimony, not just scientific testimony. *Id*. at 147 (explaining that Rule 702 makes "no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony"). The Supreme Court proceeded to provide the district courts with a checklist for assessing the reliability of expert testimony. This list of "specific factors" "neither

necessarily nor exclusively applies to all experts or in every case." *Id*. at 141. Listed considerations include whether an expert's theory can be tested, "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," and "general acceptance." *Daubert*, 509 U.S. 593-94. Yet, the "list of factors was meant to be helpful, not definitive" and will vary from case to case. *Kumho Tire*, 526 U.S. at 151. *See also Daubert*, 509 U.S. at 594 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one.") Thus, the trial court must use its discretion in determining whether reasonable criteria of reliability were used by a proffered expert and whether the proposed testimony meets those criteria. Nevertheless, "[t]he Rules' basic standard of relevance . . . is a liberal one." *Daubert*, 509 U.S. at 587, and the trial court's gatekeeping role does not permit it to reject admissible expert testimony.

In 2000, Rule 702 was amended in response to *Daubert* and cases applying it, such as *Kumho Tire*. It affirms the trial court's role as gatekeeper and provides general standards for the trial court to use to assess the reliability and helpfulness of proffered expert testimony. Advisory Committee Notes to Rule 702. In fact, the advisory comments to the 2000 amendments to Rule 702 noted that "[a] review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Advisory Committee Comments to the 2000 Amendments to Rule 702.

### III.   ANALYSIS

Cooper Tire's expert, Bruce Goldberger, Ph.D. is an independent forensic toxicologist. Dr. Goldberger holds a Master of Science and Doctor of Philosophy degree in Forensic Toxicology, and has nearly thirty years of laboratory experience as a toxicologist. He is currently employed as Professor and Director of Toxicology, Clinical Track, at the University of Florida and the University of Florida School of Medicine. He has been published extensively in the field of toxicology and

received numerous honors and awards. There is no dispute that he is well qualified to render opinions in the field of toxicology.

The Court now turns to whether Dr. Goldberger's opinions will assist the trier of fact and whether they are reliable. Dr. Goldberger's opinions in this case are based on his review of various medical records, the accident report and photographs of the scene taken by Trooper Aaron Brown, Kentucky State Police, Trooper Brown's deposition, and various discovery taken in this case. Included within the medical reports were the results of a urine drug screen. The drug screen indicated positive test results and urine drug concentrations as follows:

| Drug/Drug Metabolite | Concentration |
|---|---|
| Delta-9-THC-9-carboxylic acid (marijuana metabolite) | 281 ng/ml |
| Oxycodone | >5,000 ng/ml |
| Oxymorphone | >5,000 ng/ml |

Dr. Goldberger's report also noted supplementary documentation of abuse of alcohol and illicit and prescription drugs at the time of the accident, including two liquid-filled syringes, a spoon, and a butterfly knife found in Gumm's clothing at the University of Kentucky Chandler Medical Center, a note in the medical records that Gumm used street drugs and alcohol 2-3 times per week, a note in the medical records that Gumm's "drug of choice" was heroin, and the fact that his pupils were constricted after the accident.

Based on his review and analysis, Dr. Goldberger reached the following opinions:

A. Delta-9-THC-9-carboxylic acid (marijuana metabolite), oxycodone and oxymorphone were identified and quantified in James Gumm, Jr.'s urine.
B. James Gumm, Jr.'s use of an opioid was not medically supervised.
C. While the dose, time frame of use, and route of ingestion cannot be definitively established, the concentrations of all three analytes in the urine support recent ingestion by James Gumm, Jr.

> D. No tests were performed to identify the substance in the liquid-filled syringes. While the staff at the University of Kentucky Chandler Medical Center assumed it to be heroin, the contents could also be "injectable" oxycodone ("Oxycontin").
> E. James Gumm, Jr.'s constricted pupils are indicative of the use of an opioid such as oxycodone and provide clinical (medical) support of opioid impairment.
> F. In summary, it is my opinion that James Gumm, Jr.'s normal facilities were impaired at the time of the accident which influenced his ability to respond to an accident avoidance scenario.

[DE # 227-2].

The plaintiff contends that the Court should exclude Dr. Goldberger's opinions for several reasons. First, the plaintiff argues that because Dr. Goldberger's opinion is based on a single urinalysis, there is insufficient evidence to establish impairment at the time of the accident. However, as set forth above, Dr. Goldberger has not only relied on the urinalysis, but also the clinical finding of constricted pupils, Gumm's history of abusing oxycodone, and the drug paraphernalia found when he arrived at University of Kentucky Chandler Medical Center.

While the plaintiff seeks to exclude any evidence of Gumm's prior drug abuse, this evidence is relevant and admissible. It is illegal under Kentucky law to operate a motor vehicle anywhere while driving under the influence of any "substance or combination of substances which impairs one's driving." KRS 189A.010(c). Under Kentucky law, an apportionment instruction is required in all tort cases involving the fault of more than one party. KRS 411.182; *see Smith v. Toyota Motor Corp.*, 105 Fed.App'x 47, 50 (6th Cir. 2004). Applying Kentucky's comparative fault statute, the Sixth Circuit has held that evidence of alcohol consumption by the plaintiff on the day of the accident is admissible in a products liability case. *See Smith v. Toyota Motor Corp.*, 2004 WL 1595200 (6th Cir. July 14, 2004). Thus, any evidence of Gumm's drug usage on the day of the

accident is relevant and admissible inasmuch as it goes directly to Gumm's comparative fault.[1] Any prejudicial effect of reference to Gumm's previous use and/or abuse of prescription or illegal drugs does not substantially outweigh the probative value of the evidence establishing Gumm's impairment, if any. *See* Fed.R.Evid. 403.

Thus, while the plaintiff complains that Dr. Goldberger's reliance on the urinalysis alone does not support a finding that Gumm was impaired due to marijuana use, a review of his report reveals that he has not simply relied on the positive urinalysis in forming this opinion, but rather on the cumulative evidence of drug abuse. While Dr. Goldberger concedes that a urinalysis alone cannot support his opinion of marijuana-based impairment, he has also relied on Gumm's medical records, evidence found at the accident scene, and the clinical finding of constricted pupils to reach his opinion.

The plaintiff also contends that Dr. Goldberger's opinions about opioid impairment should be excluded because Gumm was lawfully prescribed Percocet, an opioid. According to the plaintiff, the Percocet, which contains oxycodone, could have caused the positive urine screen. However, even if Gumm consumed Percocet pursuant to a valid prescription, that does not absolve him from fault for driving while impaired.

---

[1]Despite the fact that the plaintiff seeks to exclude evidence of Gumm's drug usage on the day of the accident, the plaintiff faults Dr. Goldberger for not considering the circumstances of the accident. For example, the plaintiff complains that Dr. Goldberger failed to consider Gumm's reaction to the tire separation, the allegedly ordinary conversation Gumm had on the cell phone just prior to the accident, and the fact that witnesses will testify that Gumm was not driving erratically. Dr. Goldberger's failure to consider these circumstances, however, go only to the weight and credibility of his opinion; they do not justify excluding his opinion as unreliable under *Daubert*.

The plaintiff's next ground for excluding Dr. Goldberger's opinion is her argument that he is unqualified to opine that Gumm was under the influence of an opioid at the time of the accident based on the fact that emergency medical personnel observed constricted pupils in Gumm's eyes. The plaintiff argues that there are numerous potential causes of constricted pupils, and Dr. Goldberger is unable and unqualified to offer any opinion on these other causes. However, it is undisputed that opioid impairment causes constricted pupils and this fact is squarely within the realm of Dr. Goldberger's expertise as a forensic toxicologist. To the extent that the plaintiff argues that Dr. Goldberger must rule out other causes based on *Quillen v. Safety-Kleen Systems, Inc.*, 2010 WL 2044508 (E.D.Ky May 21, 2010), her argument fails. In *Quillen*, this court held that "although experts 'need not rule out every conceivable cause in order for their differential diagnosis-based opinions to be admissible,' they must provide a reasonable explanation 'as to why he or she has concluded that any alternative cause suggested by [the adverse party] was not the sole cause.'" *Id*. at *4 (citation omitted). Here, the plaintiff, through her experts, has not come forward with any alternative cause for Dr. Goldberger to rule out. As he is qualified as a forensic toxicologist to base his opinion of impairment on constricted pupils, the plaintiff's argument that his opinion should be excluded fails.

Finally, the plaintiff argues that Dr. Goldberger's impairment opinion should be excluded because he cannot identify the precise time or exact amount of illicit substance that Gumm ingested, or the exact degree to which Gumm was impaired. In support of this argument, the plaintiff relies on a decision from the United States District Court for the Middle District of Florida in *Battle v. Gold Kist, Inc.*, 2008 WL 4097717 (M.D.Fl, September 2, 2008), wherein the court excluded Dr. Goldberger's opinions as unreliable under *Daubert*. The *Battle* case, however, is distinguishable in

8

many respects, but primarily because at issue in that case was the analysis of post-mortem blood for marijuana. Dr. Goldberger conceded in that case that an analysis of post-mortem blood is more complicated that the interpretation of living blood and he was unable to explain the conflicting results in the post-mortem femoral blood and the post-mortem heart blood results. *Id*.

Unlike *Battle*, this case does not involve the interpretation of post-mortem blood. Moreover, the plaintiff is unable to point to any Sixth Circuit case requiring an expert toxicologist to describe the exact amount, timing of consumption, or impairment to be established by a mathematical certainty as a prerequisite to admissibility. *Daubert* does not hold experts to such an exacting standard. Because Dr. Goldberger has applied accepted toxicological standards in interpreting the urine results in this case, his opinion is reliable and relevant for the jury's consideration.

In conclusion, a review of the tendered portions of Dr. Goldberger's deposition and his expert report reveals he has reviewed the relevant medical and other evidence, analyzed the findings based on accepted standards of toxicology to a reasonable degree of toxicological certainty, and reviewed relevant third-party literature and studies. This review, coupled with his practical experience, fully satisfies the requirements of *Daubert* and Rule 702. Accordingly, for the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the plaintiff's motion to exclude the testimony of Dr. Goldberger [DE #193] is **DENIED**.

This July 29, 2011.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**