UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-CV-3-KSF

KIM LOGAN, et al.                                                                                                    PLAINTIFF

and

KENTUCKY CABINET FOR
HEALTH & FAMILY SERVICES, et al.                                  INTERVENING PLAINTIFFS

vs.                                       **OPINION AND ORDER**

COOPER TIRE & RUBBER COMPANY                                                          DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendant Cooper Tire & Rubber Company ("Cooper Tire") to revoke the pro hac vice admission of plaintiff's counsel, Farrar & Ball LLP, and disqualify them from further participation in this lawsuit. The matter having been fully briefed by the parties, it is ripe for consideration.

**I.     BACKGROUND**

Cooper Tire asks this Court to disqualify two of plaintiff's counsel ("Logan's counsel") because they wrote a July 19, 2011 letter to Steve Zamansky, Vice President, General Counsel and Secretary of Cooper Tire, proposing a meeting to discuss settlement in seven cases against Cooper Tire in six states, including this case. [DE 300]. The letter recommends that any meeting not include Cooper Tire's outside counsel in any of the listed cases. [DE 300-3].

In support of the motion to disqualify, Cooper Tire relies on Logan's counsel's pro hac vice status, which required them to agree to be subject to the jurisdiction and rules of the Kentucky Supreme Court governing professional conduct. [DE 33, 34]. It argues that the letter to Cooper Tire's General Counsel is a deliberate violation of Supreme Court Rule ("SCR") 3.130(4.2). Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Cooper Tire relies on Comment (7), which provides in part:

> In a case of a represented organization, this Rule prohibits communications to a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter....

Cooper Tire also relies on *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514 (Ky. 1994), in which counsel was disqualified for initiating and meeting with the defendant's managerial employees while knowing that the defendant was represented by counsel.

Logan's counsel does not dispute the factual basis for the motion. Instead, they respond that several authorities have addressed the same issue and said that General Counsel do not fall within the prohibition of Rule 4.2. [DE 324]. Logan's counsel argue the primary purpose of the Rule is to protect lay parties from overreaching by a person with superior legal knowledge and to prevent inadvertent disclosure of privileged information by the layperson. *Id.* at 6. Additionally, Logan's counsel argue that the communication did not involve the subject matter of the litigation and, therefore, is outside the prohibition of Rule 4.2.

Cooper Tire replies that there is no exception for general counsel stated in Kentucky's Rule 4.2 or the Comments adopted in 2009. [DE 331]. Moreover, it argues that Mr. Zamansky is more than simply in-house counsel; he is part of Cooper Tire's executive leadership team. *Id.* at 2. Cooper Tire also distinguishes Logan's case of *In re: Grievance Proceeding*, 2002 WL 31106389 (D. C. Conn. 2002), because outside counsel was not responding to plaintiff's requests and because the commentary relied upon in that case is no longer applicable in Kentucky.

II.   ANALYSIS

Logan's counsel is subject to the Kentucky Rules of Professional conduct and the judicial decisions interpreting those rules. *Umphenour v. Mathias*, 2008 WL 2785609 at *2 (E.D. Ky.

7/16/2008). A district court has inherent authority to disqualify an attorney as a sanction for professional unethical conduct. *Id.* However, "motions to disqualify 'should be viewed with extreme caution for they can be misused as techniques of harassment.'" *Republic Services, Inc. v. Liberty Mutual Ins. Co.*, 2006 WL 3004014 at *4 (E.D. Ky. 10/20/2006) (quoting *Freeman v. Chicago Musical Instrument Co*, 689 F.2d 715, 722 (7th Cir. 1982)). The court must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 715 (6th Cir. 1982).

Kentucky courts have not addressed the specific issue raised by Cooper's motion, although Rule 4.2 has been addressed in other factual contexts. In *Shoney's, Inc. v. Lewis*, 875 S.W.2d 514 (Ky. 1994), counsel for a sexual harassment plaintiff was told who would be representing the defendant Lee's and he talked with Lee's counsel. Subsequently, plaintiff's counsel "met with and procured sworn statements from two of Lee's employees, a general manager and a relief manager, without consent from or notice to Lee's counsel." *Id.* at 514-5. Plaintiff's counsel admitted that the statements were about the subject of the representation. *Id.* at 515. Lee's promptly moved to disqualify plaintiff's counsel and to suppress the statements. The court affirmed the disqualification and suppression of the evidence.

The Shoney's court relied on Comment 2 to Rule 4.2, which said in part:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization....

*Id.* It also relied on Canon 9 of the Canons of Professional Ethics, which said: "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel, but should deal only with his counsel." The court noted that "Canon 9 is to be construed literally and does not allow a communication with an opposing party, without the consent of his counsel, though his purpose be merely to investigate the facts." *Id.* at 516. It also relied on Kentucky Bar

3

Association ("KBA") Ethics Opinion E-65 which noted that the "materiality or the immateriality of the information which the attorney might obtain from the adverse party in a statement would have no bearing on the question of ethics involved."  KBA E-65, p. 2.

A similar KBA Ethics Opinion considering the same prohibition on communicating with a represented person is E-95.  There, the attorney representing a personal injury plaintiff proposed to send a demand letter to defendant's attorney and also to send a copy to defendant's insurance company.  The Opinion stated that it would be an ethics violation to send the copy to the insurance carrier.  It noted, "the only purpose of sending a copy to the carrier would be to bypass defendant's attorney in relating directly to the company plaintiff's demand."

In 2009, the Supreme Court of Kentucky amended Rule 4.2 (and others) to adopt official commentary.  Comment (1) to Rule 4.2 provides:

> This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounseled disclosure of information relating to the representation.

SCR 3.130(4.2) Comment 1.  Comment 7 states in part: "In the case of a represented organization, this Rule prohibits communications to a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter...."  SCR 3.130(4.2) Comment (7).  Plaintiff does not dispute that Mr. Zamansky supervises, directs and regularly consults with outside counsel concerning the matter and has authority to obligate the organization with respect to the matter.  Accordingly, the communication is prohibited under the plain language of SCR 3.130(4.2).

Plaintiff's argument that Rule 4.2 does not apply to communications with lawyers and is simply to protect lay persons from overreaching by lawyers creates an exception that would swallow the Rule.  Many corporate executives today are lawyers.  Is it permissible to discuss a case

4

with the president of a company simply because he or she had legal training in the past? Surely, that is not authorized. Nothing in SCR 3.130(4.2) supports such an exception.

Logan's counsel argues that the communication "sought nothing more than to continue to mend a broken relationship and to help cooler heads prevail." [DE 324, p. 3]. They argue this is not a communication "about the subject of the representation." In support, they cite *American Centennial Ins. Co. v. Handal*, 901 F. Supp. 892 (D. N.J. 1995), where the court describes the communication as "with regard only to acceptance of service, and had no bearing to the subject matter of the action." *Id.* at 900. While the July 19, 2011 letter from Logan's counsel did not mention specifics about Logan's case, it expressly solicited an *ex parte* meeting for the very purpose of discussing the subject of the representation. "I believe that if we discussed settlement of the cases we would find that our evaluations on many, if not all, of the cases are very similar." [DE 300-3]. It is impossible to discuss evaluations and settlement without discussing the "subject of the representation."

When considering a motion to disqualify counsel, "courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of his choice." *Carlsen v. Thomas*, 159 F.R.D. 661, 664 (E.D. Ky. 1994). *See also Pioneer Resources Corp. v. Nami Resources Co., LLC*, 2006 WL 1464785 at *4 (E.D. Ky. 5/22/2006). The right to counsel of one's choice is not absolute, but it is an important right. *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988).

In this case, Logan has had co-counsel, Bruce R. Kaster and Skip Edward Lynch of Ocala, Florida, actively involved since October 2010. [DE 51]. Co-counsel R. Frank Melton and C. Richard Newsome of Orlando, Florida, have been involved since February 2010. [DE 11]. Fred Peters has also been involved as local counsel since June 2010. [DE 40]. While the trial of this case is very close at hand, disqualification of Farrar and Ball will not leave Plaintiff without counsel of her choice. She will have five of her attorneys of choice still representing her.

5

The countervailing consideration here is the public interest in requiring professional conduct by an attorney. While defense counsel are not without sin, much of the acrimony in this case is attributable to counsel Ball and Farrar. As Magistrate Judge Wier noted in his recent opinion denying Plaintiff's motion for sanctions against Cooper Tire, the case is "filled with metaphorical bomb-throwing." [DE 334, p. 2]. In response to a recent settlement offer that is not insubstantial under the facts, plaintiff's counsel Wesley Ball found "no good-faith intentions" and said:

> Therefore, I and my co-counsel will not respond to any further offers which you extend personally. I have neither the time nor inclination to deal with your antagonistic communications, written or otherwise. Should Cooper wish to engage in meaningful negotiations through other counsel of its choice I will gladly reciprocate. Consider this my last correspondence to you regarding the settlement of this matter.

[DE 300-5]. Less than two weeks later, Mr. Farrar made the *ex parte* contact with Mr. Zamansky to discuss settlement. As in KBA E-95, the only purpose of such improper contact would be to bypass defendant's attorney in relating plaintiff's demand directly to the company.

The intervening plaintiffs in this case, University of Kentucky Medical Services Foundation, Inc. and Medicaid, are simply attempting to recover medical expenses they incurred relating to Plaintiff's injuries. Despite their intervention in March 2010, Logan's counsel this month would not enter into a stipulation with the intervening plaintiffs for the amount of medical expenses. [DE 319]. A cursory review of the docket totaling 335 entries through August 8, 2011, reveals many instances in which intervention by the court was necessary to resolve minor discovery disputes and the like. These examples do not involve unethical conduct, but they do reflect the lack of professionalism exhibited by Logan's counsel.

Finally, there appears to be a history of Logan's counsel violating court protective orders in other cases. In *Bradley v. Cooper Tire & Rubber Co.*, No. 4:03cv94 (S.D. Miss.), Bruce Kaster was found to possess Cooper Tire's confidential documents subject to a protective order after certifying that he had returned all documents. [DE 1967-1, p. 7]. The record reflects that the documents were provided to Mr. Kaster by Kyle Farrar, who was not counsel in the Bradley case.

6

[DE 197-2, p. 6]. Mr. Farrar, at first, insisted the documents were obtained by "my assistant from the Court file" and were not in the sealed portion of the file. [*Id.* at 9]. The court held that all of the documents were clearly stamped "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" and were marked with Bradley bates' numbers. The court granted Cooper Tire's request for discovery regarding the source of the documents. [*Id.* at 10-22]. Thereafter, Mr. Farrar said that the person who obtained the documents was not his "assistant," that he did not know when the documents were obtained, and that he had lost the receipt for the copies. [*Id.* at 26-27].

In *Johnson v. Hankook Tire Mfg. Co.,* No. 10-422 (S.D. Texas), the court found that Wesley Ball failed to return confidential information produced pursuant to a protective order after he had represented that he was going to deposit the documents with the court. [DE 19704]. In court later, he testified that the documents were destroyed, but no one could remember doing it. With respect to Ball's earlier representations, the court said: "You weren't vague. You are just now saying it doesn't mean what it clearly means." [*Id.* at 16]. Later, the court said: "I don't think sloppiness can count for all the inconsistencies." [*Id.* at 37]. It concluded: "And Hankook has my permission to disclose in other confidential information discussions that I don't believe Mr. Ball should be confided with information that is proprietary. Its preservation and its return will be unknowable." [*Id.* at 50].

In *Toe v. Cooper Tire*, No. LACL106914 (Iowa District Court for Polk County), the court admonished both Farrar and Ball for distributing a trial deposition transcript when they "knew or should have known" that the information was confidential. [DE 197-7, p. 3]. Finally, in the present case, Mr. Ball filed in the open record documents that were subject to a protective order in the case of *Pierson v. Cooper Tire*, Case No. CV 2006-007392, Superior Court of Maricopa County, Arizona. After months of denying the documents were confidential, he finally admitted that he was wrong and that the confidential documents were improperly filed in the public record. [DE 197, Exs. H, I].

The documents referenced above are part of a motion to maintain confidentiality. [DE 197]. Logan's counsel's response to the motion does not disagree with any of the facts set forth in the

7


motion. Instead, it pounds on the First and Sixth Amendment rights to public trial and claims Cooper "seeks to close the courthouse and try this case in secret." [DE 249]. This Opinion should not be taken as any ruling on the motion to maintain confidentiality. Instead, the Court is merely demonstrating a continuing pattern of unprofessional conduct by Ball and Farrar. The letter to Mr. Zamansky, after refusing to discuss settlement in this case with outside counsel, is the last straw. In this case, the public interest of requiring professional conduct by an attorney outweighs the Plaintiff's interest in having all seven of her counsel of choice participate in the trial.

The facts surrounding the letter to Mr. Zamansky and the facts regarding the violations of protective orders have not been disputed, despite opportunities for Ball and Farrar to brief the issues. The only issue before the Court is a question of law regarding disqualification. No one has asked for a hearing on the legal question. It is the Opinion of this Court that Cooper Tire has met the requirements for disqualification of counsel Ball and Farrar.

### III. CONCLUSION

**IT IS ORDERED** that Cooper Tire's motion to revoke pro hac vice admission for Kyle Wayne Farrar and Wesley Todd Ball and to disqualify Farrar & Ball LLP from further participation in this lawsuit [DE 300] is **GRANTED**.

This August 9, 2011.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**